22 C. C. P. A. (Patents)

### DEUTSCH et al. v. BALL.
#### Patent Appeal No. 3485.

Court of Customs and Patent Appeals.
June 10, 1935.

LENROOT, Associate Judge, dissenting.

---

Munn, Anderson, Stanley, Foster & Liddy, of Washington, D. C. (Harry E. Seidel, of Washington, D. C., of counsel), for appellants.

Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich. (William H. Gross, of Detroit, Mich., and George A. Degnan, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an interference proceeding in which appellants have appealed from a decision of the Board of Appeals of the United States Patent Office wherein said Board reversed a decision of the Examiner of Interferences and awarded priority of the invention to the appellee. The interference arises between an application of appellants filed March 14, 1932, and an application of appellee filed July 30, 1932. Appellee, being the last to file, is the junior party.

The single count of the interference is claim 9 of appellee's application and was suggested to appellants by the Examiner for the purpose of interference, and reads as follows: "A collapsible top for vehicle bodies *of the cabriolet or convertible coupé type* including, a main top supporting bow having its ends pivotally connected to the body for folding, a rear quarter window including a rigid frame secured to the rear vertical face of said main top supporting bow and movable rearwardly and downwardly therewith when the top is collapsed, a flexible top covering material extending rearwardly from the main top supporting bow and rearwardly from the window frame to the deck of the vehicle to close the space therebetween and secured to said window frame, and a recess in the body to the rear of said main bow into which said window is moved when said top is collapsed." (Italics ours.)

As far as the structure defined by the count is concerned, both disclosures relate to collapsible automobile tops, the frames of which, by being pivotally connected, will fold and move backward, carrying the rear-

wardly disposed window and the top into a recess in the rear portion of the body of the car, so that when the top has been collapsed or telescoped and moved into the recess in the body of the car, it is out of sight.

After the interference was declared and the preliminary statements were opened, it was found that the date of conception alleged by appellee was one day subsequent to the filing date of appellants. Thereupon, the Examiner of Interferences gave notice to appellee that judgment on the record would be rendered against him unless he should, within 30 days, show cause why such action should not be taken. Within said period of 30 days, appellee moved to dissolve the interference, alleging as ground therefor that appellants could not make the claim corresponding to the count of the interference because their application failed to disclose all the elements of the count. It was the position of the appellee that the term "of the cabriolet or convertible coupé type" was a limitation in his claim which did not read upon appellants' disclosure and, being a material limitation, could not, under the circumstances, be ignored in this kind of proceeding.

Appellee contended that the limitation was placed in appellee's claims in order to avoid the prior art, and cited a number of patents which he claimed would render such claims unpatentable unless the phrase was regarded as a limitation.

The record shows that claims 5 and 6 of appellee's application did not contain such limitation but called broadly for "a collapsible top for vehicle bodies."

The Examiner of Interferences disagreed with the appellee and held, in substance, that none of the patents cited by appellee disclosed all the structure embodied in the count when the controverted phrase was omitted, and stated: " * * * It thus appears that the allowance of the claim was not predicated solely on the introductory expression."

He then held that the term, "a collapsible top for vehicle bodies of the cabriolet or convertible coupé type," did not constitute a limitation in the count, and awarded priority of invention of the subject-matter of the count to the appellants, the senior party. In holding that the introductory phrase did not amount to a limitation, the Examiner of Interferences relied upon the cases of In re Abrahamsen, 56 F.(2d) 871, 19 C. C. P. A. (Patents) 1056, which in-

volved "a moulding scraper"; Braren v. Horner, 47 F.(2d) 358, 359, 18 C. C. P. A. (Patents) 971, which concerned the introductory phrase "in an engraving machine and the like"; and Ex parte Davis, 1929 C. D. 78, which involved "a device for grinding valve seats."

Upon appeal, the Board of Appeals reversed the decision of the Examiner of Interferences and held that " * * * the count, except in its definition of the type of car, is readable on the senior party's disclosure," but that appellants' top was not adaptable for use on vehicle bodies of the cabriolet or convertible coupé type, and that the term was a limitation which the appellants were not entitled to make, since they did not disclose a construction applied in the manner which the introductory phrase calls for.

The Board cited a number of authorities upon the well-settled rule that for interference purposes all expressly defined limitations in counts must be regarded as material and cannot be ignored. No authorities going directly to the point as to whether or not introductory phrases, such as the one at bar, constitute such limitations were cited or discussed.

In this court, appellants have pointed out that in their specification they state, "An object of the invention is to provide an automobile top which may be conveniently adjusted to completely cover the body, or, if desired, to partially cover the body and thereby provide a victoria or cabriolet," and that in the specification they refer to figures 7 and 8 of their drawings in the following language: " * * * Figure 7 is a view showing in side elevation an automobile provided with the improved top arranged to provide a cabriolet, Figure 8 is a similar view, but with the top arranged to provide a victoria. * * *"

Appellee argues in this court that the Board correctly held that the appellants did not disclose a collapsible top for vehicle bodies "of the cabriolet or convertible coupé type" within any fair meaning of that language as used in the count; it being the view of the Board and the appellee that a cabriolet is a one-seated vehicle, while the so-called cabriolet, disclosed in figure 7 of appellants' drawings, is a two-seated vehicle. In this connection it might be noted that in Webster's New International Dictionary, between pages 156 and 157, is a page devoted to "Automobiles: Typical Forms," in which a two-seated au-

tomobile quite similar to that of appellants' figure 7 is styled a "town cabriolet." Figure 6 of appellants' drawings seems to be the frame of a collapsible top which is designed to cover but one seat.

Both tribunals held, and we think properly so, that, with the exception of the introductory phrase, there is no structure specified in the count which is not common to both applications.

As to whether or not the count, including the introductory phrase in controversy, reads upon appellants' disclosure, we find it unnecessary to determine, in view of our conclusions with reference to the effect to be given such an introductory phrase.

■ It is our view that the Examiner of Interferences was correct and that the Board was in error with reference to the effect to be given this phrase. The Board concluded, and properly so, that for interference purposes, limitations in a count must be regarded as material and cannot be ignored. Extended citation on this subject is deemed unnecessary; it being definitely settled in Atherton v. Payne, 54 F. (2d) 821, 19 C. C. P. A. (Patents) 867; Field v. Stow, 49 F.(2d) 1072, 18 C. C. P. A. (Patents) 1502; and McCabe v. Cramblet, 65 F.(2d) 459, 20 C. C. P. A. (Patents) 1220.

■ The sole question necessary for us to determine here is whether or not the phrase "of the cabriolet or convertible coupé type" is a limitation within the meaning of the last-cited cases. After very careful consideration, we are of the opinion that, under the circumstances of this case, the phrase does not amount to such a limitation.

Both inventions relate to automobile top structure and with the exception of the statement indicating the use to which appellee's invention is to be applied, the count reads equally clear upon both disclosures without requiring any modification whatever of either structure. There is nothing in the structural elements of the counts which has more relevancy to a cabriolet than to any other kind of automobile. It was just here where the Board fell into error when it gave as a reason for its conclusion that "the senior party's top is not adapted for use on vehicle bodies of the cabriolet or convertible coupé type." The senior party's top is adapted for use on any kind of automobile as far as the structure defined by the count is concerned.

The inventions, as defined by the count, are identical, and appellee cannot be permitted to avoid interference with the senior party merely by inserting in the claim the use to which he seeks to apply his invention. We do not have a case here of the structural features outlined in the count being specially adapted to a cabriolet and not to a victoria, a town cabriolet, or other kind of automobile top. If the structural features of the count had to be modified in any particular in order to read upon appellants' disclosure, we might have a different question for decision. But any contention that the broad invention defined by the structural elements of the count is not identical with that disclosed by appellants, or that any single structural feature of the count requires modification in order that it may read upon appellants' disclosure is indubitably contrary to fact. So, as we view it, the count is broad enough to read with equal aptness upon both disclosures when the phrase indicating the use to which it is applied is left out of consideration.

That we may leave such a phrase out of consideration under circumstances such as are at bar and not regard it as a limitation finds support in both reason and authority. If the inventions which are defined by the count are identical and the language of the count, omitting the introductory phrase, reads equally clear upon both disclosures, without any modification whatever, what logical reason can possibly be presented for denying an interference? Unquestionably, the right to make the count is not affected by the fact that one of the applicants states that in order to avoid the prior art he is specifying in the claim the use to which his invention is to be applied. An inventor is entitled to all the uses of his invention. Braren v. Horner, supra, and cases therein cited.

It will be noticed that the contest as to the right to make the count here involved is between two applicants and not between an applicant and a patentee. No case involving a consideration of an introductory statement in a contest between two applicants, in which case the issue is the right to make the count, has been cited, and we have found none. We think, however, that certain cases hereinafter discussed are so analogous to the case at bar, both as to the facts and the principles involved, as to be absolutely controlling of our decision herein.

In Braren v. Horner, supra, the introductory phrase, "in an engraving machine and the like," being a phrase in a claim of the Horner patent, was held not to be such a limitation as to bar Braren from making the count upon a disclosure in his German patent for a device for "transmitting power with a single driving means from a stationary shaft to a movable shaft." The Patent Office tribunals had held that the German patent was not confined to an engraving machine and that the disclosure, therefore, did not respond to the terms of the count "in an engraving machine and the like." This court there said:

"We are unable to concur with the tribunals of the Patent Office in this respect. As we have seen, there is nothing about the scope of the invention in issue which depends upon its use in connection with an engraving machine. The drive being the important matter, the device might equally well be used for an engraving machine, a milling machine, a carving machine, or any other machine which may use a cutting tool held in a chuck and operated by a revolving spindle. The counts of the interference ought to be read broadly and not narrowly and with limitations not justified by the nature of the invention disclosed. Stern and Huether v. Schroeder et al., 36 F.(2d) 518, 17 C. C. P. A. [Patents] 690; Slattery v. Larner, 36 F.(2d) 298, 17 C. C. P. A. [Patents] 725.

"We are of opinion, also, that the introductory phrase, 'in an engraving machine and the like,' is not a part of the subject-matter of the counts in issue, but, under the facts in this case and the authorities, is introductory merely."

The court then proceeded to discuss and apply the case of Stearns & Co. v. Russell (C. C. A.) 85 F. 218, 224. That case involved the introductory statement, "in pill-dipping mechanism." Taft, Circuit Judge, stated: "But it is said that the claims of the patent in question here do contain a suggestion of such a combination in the opening words, 'In pill-dipping mechanism.' We think these words are only used to define the useful purpose to which the patentee intended his device to be devoted, and cannot bear the construction by which all the other substances and parts used in dipping pills may be considered as making up the combination claimed."

We, also, in Braren v. Horner, cited and discussed Langmuir v. De Forest (D. C.) 18 F.(2d) 345, affirmed in Westinghouse Elec. & Mfg. Co. v. De Forest Radio Telephone & Telegraph Co. (C. C. A.) 21 F.(2d) 918, and said:

"In Langmuir v. De Forest (D. C.) 18 F.(2d) 345, 346, certain of the counts in issue were introduced by the words, 'In a radio signaling system.' In that case the court, in its opinion, discusses the subject-matter of the interference, and the results to be obtained by the use of the device, the subject of the interference counts, and then makes the following statement:

" 'Nor is the introductory clause, "in a radio signaling system," an element of the combination set out in the claims. Moreover, it does not convert the claims into applications of the feed-back circuit to a radio signaling system. Claims so limited constituted the subject-matter of interference No. 41,223 between Langmuir and Armstrong, in which the latter prevailed. It does not limit the invention defined by the actual combination claimed.' "

Also, in the Braren v. Horner Case, we considered the case of Ford Motor Co. v. Parks & Bohne, 21 F.(2d) 943, where the Circuit Court of Appeals of the Eighth Circuit had before it claims with the introductory words, "an automobile transmission band" and quoted from said case the following: "This phrase we think imports nothing by way of structural elements into any of these claims, nor does it make them other than claims to a strap brake with a detachable ear. These words merely state the environment in which the device is to be used; and, in the language of then Circuit Judge Taft, in Stearns v. Russell (C. C. A.) 85 F. 218, 'define the useful purpose to which the patentee intended his device to be devoted.' "

Later, in Braren v. Horner, supra, this court used the following language: "These cases, we are of opinion, are in point here and are sufficient authority, in view of the facts disclosed by this record, to justify the conclusion that the words, 'in an engraving machine and the like,' as used in the counts in issue here, are introductory only, and should not be considered as limitations of the subject-matter of the issue. It is true, as stated by the examiner of interferences, that in some cases courts have held that similar introductory words should be considered as limitations. *However, we think it may be safely said that in all such cases an examination of the facts disclosed by the record will show that the words thus*

*considerered as limitations were an essential element in the novelty of the device and of the invention in issue there.* No such contention is properly made here, as it is obvious that if there be invention, it is not in the construction of an engraving or similar machine, but in the drive by which such machine is operated. [Italics not quoted.]"

It seems to us that the language last above quoted is directly applicable to the issue at bar, and that while there an application and a patent were being considered, we can see no possible difference in principle when all the facts of the case at bar are taken into consideration.

See, also, In re Dawe, 53 F.(2d) 543, 19 C. C. P. A. (Patents) 728; In re Abrahamsen, supra. Compare McCabe v. Cramblet, supra.

As was said in Braren v. Horner, supra, in certain cases introductory phrases were regarded as limitations in claims because they constituted part of the invention in issue. That is not the case with the invention at bar. We repeat that it is the same invention whether it is used on a cabriolet or any other kind of automobile, and may be so used without the slightest modification as far as the structure of the count at bar is concerned.

We pointed out in the case of Hall v. Shimadzu, 59 F.(2d) 225, 19 C. C. P. A. (Patents) 1288, in an opinion by Lenroot, Judge, that where an introductory phrase was absolutely essential to point out the invention it would be regarded as a limitation, and that this was only an exception to the general rule that introductory phrases would not be considered as a part of the subject-matter of the claim.

We went into this same subject-matter in Re Buttolph, 73 F.(2d) 936, 937, 22 C. C. P. A. (Patents) 802, where a claim called for "a discharge tube for positive column light." We there discussed the cases of Braren v. Horner, supra, and Hall v. Shimadzu, supra, and held that the phrase "for positive column light" was more than merely introductory and was an essential element in the novelty of the device.

In the case at bar, the structure defined in the count need not be limited to a top for vehicle bodies "of the cabriolet or convertible coupé type" in order that the invention be definitely defined by the structural features of the count.

It is our conclusion that the Board erred in reversing the decision of the Examiner of Interferences which held that appellants had the right to make the count, and that appellants were entitled to priority of invention of the same.

After the record herein had been certified to this court, appellee suggested a diminution of the record, and we issued writs of certiorari requiring the certification and return to this court of certain documents, a part of the record in this case in the Patent Office, but not included in the original return. Our order respecting such writs provided that the cost of printing such documents should be assessed by us in our decision upon final hearing. We find that the complete motion to dissolve the interference, made by appellee, only portions of which were included in the original return of the Commissioner of Patents, should have been included in said original return, and the cost of printing such motion, beginning on page 42 of the printed record, should be, and is, assessed against appellants. The other documents later certified and returned, pages 49 to 122, inclusive, consisting of various patents, were not material to any of the issues before us, and the cost of printing such documents is assessed against appellee.

The decision of the Board of Appeals is reversed.

Reversed.

LENROOT, Associate Judge (dissenting).

I regret that I feel compelled to dissent from the conclusion of the majority herein, and the reasoning upon which such conclusion is based.

In my opinion, the phrase "a collapsible top for vehicles of the cabriolet or convertible coupé type" should be regarded as a positive limitation in the count in issue, appellants' application does not disclose such a top, and therefore they cannot make the claim corresponding to said count.

That appellee relied upon said phrase to lend patentability to the claim, copied from his application by appellants, is abundantly established in the record. Nowhere in the record does it appear that the Primary Examiner, in allowing the claim to appellee, did not consider the phrase above quoted as one of the elements making the claim allowable over the prior art. The most that appears in the record tending to show that the phrase was not necessary to patentability of the claim is the statement of the Examiner of Interferences that the

allowance of the claim by the Primary Examiner was not predicated *solely* on the said phrase. Therefore, if the allowance of the claim was due in part to said phrase, it would seem that the Primary Examiner considered it as a positive element in the claim.

The case of Braren v. Horner, 47 F. (2d) 358, 359, 18 C. C. P. A. (Patents) 971, discussed in the majority opinion, is readily distinguishable from the case at bar. In that case, no question was involved as to the right of the appellant there to make the claims corresponding to the counts there involved. The question there in issue was whether appellant could rely for priority on his earlier German application. The counts in that interference contained the phrase, "in an engraving machine and the like," and the question was whether such phrase should be construed as introductory merely, or should be construed as a limitation not disclosed by the German application. The device disclosed in the German application could be used in "an engraving machine and the like" without modification, although said German application made no reference to "an engraving machine and the like." We there held that the appellant, Braren, was entitled to any use of the device disclosed upon the face of his German application. We there said: "Braren's said German application No. D-42851 plainly disclosed a device which will perform all the functions which are disclosed by the interference counts, 1, 2, 3, 5, and 8. * * *"

In the case at bar, appellants do not disclose a device which, without modification, is adapted for use on a vehicle of the cabriolet or convertible coupé type, as hereinafter set forth.

In my opinion, the case of In re Buttolph, 73 F.(2d) 936, 939, 22 C. C. P. A. (Patents) 802, is directly in point upon the question of whether the phrase here under consideration should be considered as merely introductory or as a limitation in the claim. In that case the question involved was whether the introductory phrase, "a discharge tube for positive column light," should be regarded as a limitation in the claims there in issue. The claims were copied by the appellant there from a patent to one Hertz for the purpose of interference, but appellant's application did not disclose a "positive column light." Both tribunals of the Patent Office held that the phrase was a limitation in the claims, not disclosed in appellant's application as filed,

and we affirmed such holding. In our opinion we said: "In the instant case, it seems not to be disputed that the novelty *relied upon* by appellant and by Hertz is in the use of said gases in a *positive column light.* * * *" (First italics mine.)

We further said: " * * * If the teachings of Hertz are followed, a positive column light must result. We do not think this is true in the teachings of appellant. As was suggested in Braren v. Horner, supra, we think the phrase 'for positive column light' is 'an essential element in the novelty of the device.' "

In the case at bar, if the teachings of appellee are followed, a collapsible top for a vehicle of the cabriolet or convertible coupé type must result. I do not think this is true in the teachings of appellants.

However, in said Buttolph Case, we further said: *"Whether the phrase 'for positive column light' may be relied upon to lend patentability to the claims of the Hertz patent is not a matter for our consideration here. It is a limitation in the claim, is obviously relied upon for novelty,* and we think that the Patent Office tribunals were correct in holding that appellant could make the claims involved only by showing that he disclosed this limitation in his application, and were correct in rejecting such claims when presented in appellant's application." (Italics mine.)

The Examiner of Interferences and the Board concurred in finding that the type of car defined in the count is a two-passenger car, and that appellants' application does not disclose a top applied to such a car. The Board of Appeals in its decision stated that appellants' top "is not adapted for use on vehicle bodies of the cabriolet or convertible coupé type."

Whether appellants' application does in fact disclose a top adapted for use on vehicle bodies of the cabriolet or convertible coupé type will be hereinafter discussed. Assuming, for the moment, that the Patent Office tribunals were correct in holding that appellants' application does not disclose a top as aforesaid, it seems clear to me that they, appellants, would not be entitled to a patent for a claim corresponding to the count in issue because of lack of such disclosure.

I am therefore led to the conclusion that the words, "vehicle bodies of the cabriolet or convertible coupé type," should be construed as a limitation in the count. It was clearly intended as such by appellee, for

the record shows that, in his opinion, the claim corresponding to the count would not be patentable unless so limited.

In the case of Field v. Stow, 49 F.(2d) 1072, 1073, 18 C. C. P. A. (Patents) 1502, the count in issue recited a floor supported on sill flanges. This element was disclosed by the appellant's patent in that case; appellee's application recited a floor supported by, but not on, sill flanges. We there held that, by reason of the limitation in the count, appellee could not make the claim corresponding to the count. We there said: "Appellant had the right to expressly limit his patent claim, as he did, to a floor supported *on* sill flanges."

So here, I think, it is clear that appellee used the phrase "of the cabriolet or convertible coupé type" as a limitation in his claim to insure the patentability thereof, and I think that we should so regard it.

It is so elementary that expressly defined limitations in a claim may not be disregarded that the citation of authority to that effect is unnecessary.

I would observe that if appellee had intended to use an introductory phrase only, not importing a limitation, there was no necessity for using the words "cabriolet or convertible coupé type," for the words "vehicle bodies" would have been sufficient as an introductory phrase.

It seems to me that the case of In re Buttolph, supra, should control our decision here. There we held that the parties relied upon the introductory phrase as a limitation in the claim. In the case at bar appellee, from whose application the claim corresponding to the count in issue was copied by appellants, relies upon the introductory phrase as a limitation in the claim. In the Buttolph Case, we expressly declined to pass upon the question of whether the patentee from whose patent the claims were copied might rely upon the introductory phrase to lend patentability to the claims copied by the appellant there. In the case at bar, appellee relied upon the introductory phrase in the count before us to lend patentability to the claim, and, under the authority of said last-cited case, whether the phrase may ultimately be relied upon for that purpose "is not a matter for our consideration here."

The next question is whether appellants' application discloses a collapsible top adapted for use on vehicle bodies of the cabriolet or convertible coupé type. They insist that the term "cabriolet" includes a certain form of two-seated vehicle, as well as a one-seated vehicle. Appellants' application does not disclose a one-seated vehicle, and all the drawings of their application disclose two-seated vehicles, the driver occupying the forward seat, while appellee's application plainly refers only to a one-seated vehicle.

Both tribunals of the Patent Office concurred in holding that the terms "cabriolet" and "convertible coupé". used in the count refer to a single-seated vehicle; this holding, I believe, is in accord with the ordinary meaning of these terms as applied to automobiles.

Since, as hereinbefore stated, appellants' application does not disclose a one-seated vehicle, I hold that appellants' application does not disclose a vehicle body "of the cabriolet or convertible coupé type," and I agree with the Board of Appeals that the collapsible top disclosed by appellants is not adapted for use on vehicle bodies of the cabriolet or convertible coupé type.

Appellants insist that their drawings 7 and 8 disclose a collapsible top adapted for use on a cabriolet, but I agree with appellee that these drawings merely show a two-seated vehicle with the top in different positions of adjustment.

The Board of Appeals observed that whether there is a patentable invention common to the two cases is immaterial. I agree with this statement in view of the phrase which I construe to be a limitation in the count.

I would observe in this connection that if there is a patentable invention common to both applications, appellants could readily have made a claim not limited to vehicle bodies of the cabriolet or convertible coupé type; such claim, if allowable, could then have been suggested to appellee and an interference declared. For some reason, appellants did not take this course. As hereinbefore noted, appellee insists that such a claim would not be patentable in view of the prior art.

The Board of Appeals in its decision stated: "If a party without supporting disclosure were held in an interference proceeding to have the right to make a claim, the Office would then be confronted with the proposition of either granting him the claim in a patent the disclosure of which does not support the claim or refusing to permit him to have the claim in the patent on the ground that he cannot make it after awarding priority of invention to him on

the basis that he can make it. So an applicant cannot even for the purposes of interference have claims allowed to him which do not read upon his disclosure. In re Fischer (Cust. & Pat. App.) 58 F.(2d) 1058.

Unquestionably the statement last above quoted is true, but, under the majority opinion in the case at bar, we will have the anomalous situation of a patent being ultimately granted to appellants for "a collapsible top for vehicle bodies of the cabriolet or convertible coupé type" when no such type of vehicle body top is disclosed in their application.

For the reasons given herein, it is my opinion that the decision of the Board of Appeals should be affirmed.